Thank you. Chief Judge Gregory, and may it please the Court, Justice Kagan somewhat memorably said we are all textualists now. And I actually agree. But that leaves the Court in a somewhat doesn't actually. Your Honor, 47H says after 180 days, regardless of whether the director of your facility has said that, you know, has moved for a hearing, you can move for a hearing under 47H. Doesn't tell us who has the burden of proof. Doesn't tell us what you need to show. But gives the district court the discretion to deny it. But we just don't know how. On what grounds? I would not say, Your Honor, that it gives the district court discretion to deny it. I would say the text. I only meant, I misspoke. I didn't mean deny the motion. I just meant did not have to hold a hearing. Doesn't the district court, is the district court required to hold the hearing if the petitioner moves for it? We contend, Your Honor, that 4247H, the text of it is silent. That's all I meant. And I really was supporting your, even though you might not infer that, but I was supporting what seems to suggest the lack of guidance we have. My office. I'll stop talking for the rest of the day. Your Honor, I would never want that. Since it's not likely you're going to get that. My office, we've wrestled with these cases. And we've wrestled. And 47H, again, is silent. And there are questions underlying the very narrow issue here that are currently pending in the district court, and actually pending in at least one case before this court in a somewhat indirect manner, as to what do you even need to show under 47H. 4248E is very clear that the burden is on the respondent, in this case the committed individual, to show by a preponderance that they no longer meet the standard. 47H is much broader. It actually just says a hearing to determine whether you should be discharged. So it gives us very little guidance. So what we did in our brief, and I think is the correct thing to do, is for this court to analogize to what we can find to be the closest analogs in the law. And here you have, stripped down, a basic case where one party moves for relief. The other party opposes. They both present some bare-bones factual allegations, or actually more than that. In our case, an expert report, and as well in the government's case. We contend, and I think it's obvious on the record, that creates a dispute of material fact. In choosing how to resolve that dispute, the district court could say, take this evidence in the light most favorable to one party, and if doing that there's no way under the law I could grant relief, we don't even need a hearing. I'm assuming everything you're saying is true, and you still lose. What the district court cannot do, and I cannot find an analog in the law where the court's ever allowed to do this, is to say, I'm going to accept what you're saying is true, and you win. And I'm not going to credit the allegations of this other party. You get a hearing. And there were, yes, Your Honor. I'm sorry. Twombly does not provide guidance as far as you're concerned. It has to state claim for relief that's possible. Yes. It has to. Yes, you're right. Yes, I'm right that it doesn't. I'm sorry. I'm sorry. Could you repeat? I want to make it right. Yeah, no. Just answer it the way you. I was really asking about the applicability of the Twombly standard, and you would argue, I think, that it doesn't apply in this context. Right, Your Honor. And. But why not? I mean, even accepting that, wouldn't you argue that your client's allegations are plausible? Yes. Our client's, his allegations are plausible. And just looking into the record a little bit, you know, there are certain things I think the district court relied on. What's your answer? That's not the proper standard? I'm sorry. Could you repeat? I must have. You were saying 12B, Your Honor? I was looking at the Twombly standard, and I think Judge Taz's question was, why not the Twombly standard? I apologize. You said Twombly, and I heard 12B. So. Sorry. Yes. No, that's on me. Right. That I think as long as there are plausible allegations. And, again, one thing underlying this case that we did not get to in the district court, and, again, it's strange to be up here saying what we need to show, because it is an open question, again, under 4247H, who even bears the burden of proof. Fuchsia v. Louisiana, Supreme Court case from 1992, was a case about an insanity acquittee. So he was found insane. He was found not guilty by reason of insanity. And then Louisiana, the state of Louisiana, said to be released, you need to prove to us you're not dangerous. And the Supreme Court said no.  And that was certainly enough to put you in confinement. But it does not obliterate your due process right to liberty. And in order to keep you confined, the state needs to actually demonstrate continued confinement. Now, I know this is way outside of what we briefed in this case. We're all sort of struggling for some ground rules. It would logically seem to me that the petitioner would have the burden in a civil context, but this is an odd civil, because he's detained. He's deprived of his liberty. Yes, and, Your Honor, and that is exactly right. And I think, obviously, there are possibly a few cases in the law where the non-moving party might have the burden of production. I'm not familiar with this area, but I am told that, you know, in a breach of fiduciary duty claim, if you establish the fiduciary duty, it then flips to the other party to show that they didn't breach. But here we're confronted with silence in 47H. And the Due Process Clause fills in that silence, informed by FUSHA v. Louisiana, which says that if an individual was found to be dangerous by reason of mental disease or defect and, therefore, was properly confined, the burden does not shift to him to then have to prove his way out. And I think Congress understood that in part. They set this 180-day limit in 4247H, so you couldn't have a situation where someone just keeps coming up. And we are happy to have supplemental briefing on this point. Again, it's not if the Court so desires. In some ways, it is relevant to the standard we need to get to. Or we submit this Court could also resolve this in a much more narrow way. And just looking at the record, Joint Appendix 89, the government's expert, Dr. Ross, she mentions that Mr. McLaren describes an encounter with the clinical coordinator of the CTP program that he described as negative. Well, that right there demonstrates that his nonparticipation in this program, and we know this to be true, he's our client, was driven by something more than simply a lack of desire for treatment. The District Court obviously relied heavily on what it simply called, oh, Mr. McLaren got older and that's not enough. Well, again, compare the reports. Joint Appendix 121 to 123. A lot more happened than he simply got older. There is a ton of scientific research. Yes, Your Honor. There's nothing specific to him, though. There's nothing that I saw that was specific to the petitioner, to McLaren. Is there? It was basically that you're less likely to recidivize. Is that a verb? Recidivate. Recidivate because you get older. That because he didn't, his charges weren't hands-on. They were pornography. That's a factor that suggests an unlikelihood of recidivating. And you're, sorry. And there was one other. And yet he did have hands-on offenses in his past. But I actually, I went through the allegations and I didn't exactly see anything other than, well, as you get older, you're less likely to be a sexual predator, which is the passage of time. Which is the functional equivalent of the passage of time. And, Your Honor, you're right. This is not a case where there was some specific thing. You know, take an example. Mr. McLaren had an accident and he broke his neck and now he's a quadriplegic. You know, that could be specific to him. And his medical expert spent three hours with him, I think? Yes, Your Honor. But I want to be clear that, again, and this is how Judge Howard referred to it as well, you can say the passage of time, oh, he got older. But there's a scientific basis for that. And if you compare the two reports, and, again, this is what would be done at the hearing. If you look at. . . With the passage of time, don't most people get older? Everyone. . . Isn't that his point? Did it just. . . Well, everyone I'm aware of, Your Honor, but here's the difference. Here's one of the few things, and this is an area of science where the experts disagree. You know, this is how this is so different than, say, something like schizophrenia or our cases we deal with under 4246. The experts disagree on here, but here's one thing, and we point this out, Dr. Rossell points this out in his report, that with very little exception, advanced aging decreases the risk for recidivism. And I just want to compare that. Dr. Ross said, page 105, that his age 54 conduct, which, again, was 20 years ago. You know, he's over 70 now. It suggests that his sexual interest might not be waning, and then she doesn't actually say we should discount age. She just says it should be interpreted with caution. Well, she said that he didn't follow the common trajectory of other reduced sexual offending beginning at 40. And, Your Honor, I would say that there is a difference, and if you look in Dr. Rossell's report demonstrating, there's a difference between age 54 and age 70. Dr. Ross also said on 106 his physical functioning, again, just physical deterioration, the ability to. . . The passage of time. Well, and the ability physically to be able to commit crimes and hurt people when you're a 71-year-old person who's lived in BOP. She says it does not appear to have decreased since he was in the community. I was in college when he was last in the community, 20 years ago, and Dr. Ross didn't know him then. So, again, she's making a factual assumption that, you know, on cross-examination, if we were to get to the hearing to which we believe we're entitled, it would have easily been torn apart, and instead, Judge Howard didn't give us that opportunity, didn't give us. . . Yes, Your Honor. Brignac, you may have mentioned this and I overlooked it, but the other thing that, at least to me, appears to be significant is that there's been a change in the DSM standards from the first time that your client was diagnosed to now, which suggests that the medical community's understanding of pedophilia from a lifelong condition is something less than that. It would seem to me that that by itself would suggest the need to make some inquiry at a hearing. Right, and thank you, Your Honor. We fully agree, and that's obviously on pages 10 and 11 of our reply brief, where we actually say, you know, not only has Mr. McLaren changed, but the science has changed, and this is evolving. The new DSM came out, and here was the change. It went from saying pedophilia was a lifelong chronic condition to it is not a lifelong chronic condition. Now, we don't dispute that Mr. McLaren, we would say, still suffers from pedophilia, but certainly the idea that science is now saying this is actually curable certainly gets to the question of your ability to control yourself and possibly having it wane. A new actuarial instrument also came out, the MATS-1, and with complete candor to the court, the MATS-1 is honestly not considered as robust of an instrument as others. But again, that's something that at the hearing, we still presented this. There's a new actuarial instrument that gives him a 2.5 percent recidivism rate. That's enough to open the door for a hearing, even if the government tears that apart on cross. Yes, Your Honor. What's your standard for getting to a hearing? That accepting—actually, Your Honor, I will say nothing because I believe, because we believe, even though it's not really briefed here at all, that the government bears the burden of proof that we simply need to make the allegation, and that would get us a hearing. Now, you know, understanding that may be a bridge too far for this court, we would say at a minimum, and if this court wants to resolve this case on the more narrow grounds, as long as you present factual allegations that, if true, would meet your burden of proof of demonstrating that you are no longer sexually dangerous, that's enough. Here, we went farther than that. We presented an expert report, opining as much. And the alternative, you know, I guess the alternative would end up having these cases, and again, I don't think this is at all efficient civil litigation, just packed with expert reports on both sides, and you wouldn't have cross-examination. You would end up deciding these on the paper. Another thing, just to set this court's mind at ease, you know, in terms of are you going to open these floodgates, you know, my office handles almost all of these, so we definitely crunched the numbers, and as of earlier this week, there are 59 total people committed in the Eastern District of North Carolina at Butner, and because some of them are panel cases, I don't want to give an exact number, but there's only between 5 and 10 challenge hearings that have been filed. Judge Boyle, the district judge, he actually grants these simply by virtue of moving for them. As a matter of course. As a matter of course. We've only filed three in his court. These individuals are mentally ill, but they are very rational and very competent, and we understand that if every 180 days we're knocking on the courthouse door, all we're going to do is annoy the fact finder who holds the key. So we very much, and a lot of these individuals too, enter the treatment program. You know, they understand. They say I am sick. I want to be cured. So, you know, look at Mr. McLaren's case. He was in for over two years. We weren't sitting there at 180 days saying give us our hearing. We waited until we could get an expert out of our own money to evaluate him and to say now we believe we can win a hearing. In his case, considering the way it went down at the initial hearing, where the government expert was even saying he probably is better for conditional release than commitment, he's one you think we would be there at 180 days knocking on the door, but we're not. So I know that's a practical concern, but I also know practical concerns shouldn't be ignored. The other example is, you know, 4246, which is analogous statute. We filed for one challenge hearing in 2016 because, again, we understand. We're not here to waste the court's time. We're here to do what's best for our clients, and, again, that is not filing frivolous litigation. This wasn't frivolous. We deserved a hearing, and we asked the court to vacate the judgment of the district court. Are there no further questions? Thank you, Mr. Brignard. Mr. Lockridge. Chief Judge Gregory, may it please the court. My name is Michael Lockridge. I represent the United States, the appellee in this case. The court should affirm the district court's denial of Mr. McLaren's motion because the district court did not err in denying the motion. Did the district court err in impermissibly relying on McLaren's failure or refusal to participate in? No, not at all. Not at all, Your Honor. No, the district court considered his refusal, and it's an undisputed fact that he has not participated in sex offender treatment. It's just a fact amongst other facts that the district court considered because the standard that the district court used in this case, we would contend is the correct standard to merit a hearing, is that the movement's request for hearing must state with particularity the extent to which his mental condition has improved since his commitment and what he's done, and if anything, to merit a discharge hearing. In other words... So that's a factor that the district court can consider? Absolutely. It certainly goes to the issue of whether his condition has improved, whether he's actively pursuing treatment that may impact his condition. So what's the impact of these kind of external changes that the other side talks about, the DSM change and the evolution of this new instrument, is that at all relevant to the analysis? To the extent it's relevant, it's not. I don't think it's a material... First question, is it relevant? Well, I don't think they're directly relevant to Mr. McLaren. Well, Dr. Rozelle did point out that there is a, and you mentioned, Judge Diaz, that the DSM-5 language has indicated that pedophilia may not be as chronic as it once was thought to be, but nevertheless, Dr. Rozelle, and it's undisputed that Mr. McLaren still suffers from pedophilic disorder. Dr. Rozelle did not opine that his disorder has remitted, and the DSM-5 doesn't actually have a category for remission of pedophilic disorder. You'll notice in looking at the DSM-5 that other sex disorders do have a category for remission, but pedophilic disorder does not. In this case, along with that standard, Your Honor, that the district court used, we would contend that it was the correct standard. There were two other cases. So what about the utilization of this new instrument to gauge recidivism? It's an actuarial instrument that I guess that experts use to determine generally whether a person meets a certain category of risk in relation to their age and other factors that are also considered convictions, prior offenses against children, a lot of factors that they use. So as Mr. Brignac mentioned, the MATS-1 is not used, at least in the eastern district or in North Carolina very much, even though it was used here. The problem that I have is all of this sounds like the kind of thing that needs to be hashed out in a hearing, the credibility of the instrumentation, whether or not the change in the DSM is something that needs to be considered with respect to this particular detainee. As I read the statute, it doesn't seem to me to be a very high, it shouldn't be, a very high burden to at least warrant a hearing. Well, again, Your Honor, the data and the studies that Dr. Rozelle referred to are not particularly applicable to Mr. McLaren. Talking about the MATS-1, although he listed a percentage of 2.9 percent, at the district court hearing, at the commitment hearing in 2013, the district court recognized that the actuarial instruments used by the experts may not be applicable to Mr. McLaren due to his conduct or sex offending at a relatively late age in life. Therefore, even though the charts may show that the risk to reoffend goes down once you age after age 40, in Mr. McLaren's case he actually did reoffend at age 54 by possessing child pornography, showering with a boy, taking pictures of a boy. After they searched his house two days later, they actually found a rubber penis in a pocket with other items in his car. You're going into this sort of level of detail that the district court did not go into. It was simply almost a summary denial without the analysis that you're suggesting might be appropriate. Your point of view may be correct in the end, but the question is why not have the hearing in order to have the judge consider all of that? Well, the undisputed facts before the district court and the record indicates the district court considered them, the undisputed facts are that there's been no showing of an improvement in his condition or that he's done anything to show that he's no longer sexually dangerous. Dr. Rozelle's report, Your Honor, is evidence that the district court considered, but it's not a magic ticket just because you have an expert report to get a hearing. And it's your position, I take it, that McLaren has the burden of proof. It is. I'm sorry, the burden to show that he should receive a hearing. We would contend that is the case, Your Honor. The Fourth Circuit has ruled in unpublished cases, United States v. Taylor and Anderson, that in a 4246 case that when those committees move for a hearing under 4247H, the burden is on the movement to get the hearing by preponderance of the evidence. That's not binding on this panel. It's not, Your Honor. But if you look at the recent case of United States v. Comstock, which is a reported decision, although the court in there said that if the court determines by preponderance of the evidence at a discharge hearing that the person is no longer sexually dangerous, then the court would release him. So it didn't say who the burden is on, but it did mention the preponderance of the evidence standard. Which is a civil. That is the case, Your Honor. Moving on to the issue of age and health. Think about the whole idea. This man was punished for his criminal activity, right? Yes, Your Honor. And for criminal law purposes, he should have been released. For criminal law purposes, that's correct, Your Honor. Correct. So then the government moved civilly to say he needs to be incarcerated. Not incarcerated. You call it something else, but it's locked up. Sure. Committed, Your Honor. Committed. All those mean the same thing. Locked up. So he needs to continue to be locked up. It was your burden then, wasn't it? It was our burden then, Your Honor. Why does it shift? Well, we have a district court commitment order that says it's a civil case, which is clear. The Supreme Court said these are civil cases. The district court commitment order found by clear and convincing evidence that he was a sexually dangerous person. Now it's his burden to show that he's no longer sexually dangerous, Your Honor. And the reason he bears the burden is because the district court order is still in place. But that order doesn't say that's permanent, does it? It does not say it's permanent. As a matter of fact, it contemplates periodically refreshing that basis for keeping him committed, doesn't it? It does, Your Honor. Wouldn't it be logical that the government would have to continue to show it's necessary? Well, Your Honor, regardless, we would say no, Your Honor. But regardless of that, in this case, Mr. McLaren simply has not put forward evidence, notwithstanding Dr. Rozell's report, that his condition has improved any. Let's take that logic. Let's say he's about 74 now or so. Seventy-three. Seventy-three? Yes, Your Honor. So let's say, hypothetically, he continues to do what you say, nothing. And now, some 15 years later or so, whatever, he's 90 years old. You would say then he continues to stay because he hasn't done anything to improve himself, in spite of the age being 90, correct? I wouldn't say that necessarily, Your Honor. In this case, Dr. Rozell had the opportunity to put in his report, if in fact that was the case, that due to his time in prison, due to his hypothetical condition remitting, due to his physical conditions. I thought that's what he did say. He did. To the extent he said it, Your Honor, he didn't back it up. All he said was he's getting, excuse me. He wouldn't back it up in the petition, would he? I thought that if he puts it forward, why isn't that sufficient? Well, Your Honor, as held by this district court relying on other cases, and I understand that they're not reported cases by this court, but relying on two other cases where the district court denied motions for 47H hearings, which this court affirmed in unpublished decisions, the court held that in order to merit a hearing, you must put forward evidence to show improvement in your condition, particularized facts, I should say, that show specific changes, Your Honor. And in this case, he didn't do that. And again, the district court was certainly aware of his condition at the time it committed him. So now, under your theory, he has to wait another six months. That's, Your Honor, it's not clear under the statute. It's not clear to me. That statute does say 180 days, Your Honor, but it says after the court's determination. Right, after the. So it's unclear whether they have to have a hearing and be denied on the hearing or whether he could do it now. Interestingly, Your Honor, in this case, the district court denied his motion without prejudice. Mr. Lockridge, if what he presented was not enough, what would be enough? Well, Your Honor, again, hypothetically, Dr. Rozelle, if in his opinion he believed that Mr. McLaren's condition had improved, he could have stated it improved. He didn't state that. He references some studies. Well, he says he evaluated him. He concluded that he's qualified for discharge because even though he suffered from a pedophilic disorder, he would not have serious difficulty refraining from sexually violent conduct or child molestation. And, Your Honor, so did two experts at the commitment hearing say the same thing. But in this case, he's giving an opinion without evidence in his report that his condition has improved. Well, he goes on and bases that conclusion upon what we talked about later, which you say isn't particular to this defendant. But I'm not so sure that that's not enough, at least to warrant a hearing. Well, those references he studied, Your Honor, on age, those studies were in existence prior to his commitment. Well, the change in the DSM wasn't. The change in the DSM wasn't, but Dr. Rozelle himself said he still suffers from pedophilic disorder. So he must think it's chronic in his case to still suffer. As I understand the change, it's not whether or not you suffer or don't, but that the condition can ameliorate over time. And he mentioned that it could, Your Honor. It could increase. It could fluctuate. It could go higher. It could go lower. But he never said his went higher, lower, or didn't fluctuate at all. He just cites the DSM. So if we send it back, all Mr. McLaren would have to do is to have a medical doctor internist testify more particularly with respect to his physical condition? Well, Your Honor, and I think earlier you noted during Mr. Brignac's argument that Dr. Rozelle was a medical expert, I believe. You might have said that. He's a psychologist, so he's not a medical expert. So yes, Your Honor. That was why I asked the question, that in your view, would it be enough still trying to figure out this burden? It could be, Your Honor, and maybe in combination with a psychological opinion because a medical expert may not be an expert in whether someone's dangerousness as a pedophile. Surely. I'm sorry, Your Honor. It would be a fact certainly the court would consider, and it may put him over that hurdle to get a hearing for sure, Your Honor. But one thing, you said he has the evidence that his condition improved, right? Yes, Your Honor. But that's obviously hopeful. That's what you hope for. But it's more than that, though, and I think that's what his expert is saying, that it's not necessarily his condition has to improve, because that's why you rely on the fact that he's still listed as a pedophile. That's his condition. Yes, Your Honor. But his expert is saying it's more than that. It could be a change in him. That is correct, Your Honor, a change in his circumstances. No, no, no. Or in him. Wait a minute. Let me finish my question. You're right. I said change first. So let's talk about the logic of that. There's change. One is that's a subset in terms of, like you said, his thoughts, his motivations. But there's another change that's a physiological change. And that comes with age, like testosterone. You know that, right? Yes, Your Honor. That dissipates in males with age. Yes, Your Honor. Doesn't it? It has a tendency to, yes, Your Honor. It has a tendency. It does. Well, it depends on what your age is, Your Honor. If you're at a younger age, it increases once you get to a certain age. I'm thinking about what I've read about for other people, you know. Yes, Your Honor. Once you get a certain age, it does decrease. Yes, but it does, doesn't it? Yes, Your Honor. And that's the same thing when I asked you about 90 years old. It may never be any evidence that his pedophilia has improved or his changes have been different in thoughts. But it gets to a point where it's chemically so. At about 90 years old, you say, well, it may still be, but nothing's going to happen there in terms of just the way. So age is a factor. Shouldn't it be weighed in a hearing as to what effect that has on what he looks, what he sounds like? You know, we always talk about district courts. We defer to them so much because the classic line is, it was a district court there who was able to observe the witness in the chair, and that's why appellate judges say we defer to it. That's why you have to weigh what this age factor has to do in terms of credibility and looking at him. Why wouldn't that be appropriate for a hearing? Well, Your Honor, if that were the case, then, as Mr. Brignac mentioned, he could petition, the court would be required to grant his petition every 180 days. And that would be a problem. Why? I mean, if he could show, especially if he could show something. So his first petition is at 75. You would assume that you're getting close to a chronological cusp where the likelihood of his ability to engage in violent sexual predation is diminishing sufficiently to make it increasingly unlikely as the six months. Sure, Your Honor. Sure, Your Honor. You know, I guess statistically, Your Honor, that's correct. Of course, there's been sex offenders commit sex offenses while they're in nursing homes. So in this case, Your Honor, the reason that the standard is in place, rather than just the 180-day requirement, is to have some level of the standard in place as being. Because I didn't think there was one. I thought that was part of the problem. Well, the district court used a, I guess a required the movement to make a showing of, with particular facts to show an improvement in their mental condition or change in circumstances, as Chief Judge Gregory mentioned. And you're comfortable with that? Yes, Your Honor. Your Honor, it's. . . You're comfortable with that? You just don't think it was met here? I don't think it was met here, Your Honor. I don't think it's too far from the standard that you have to show a prima facie case, allege prima facie facts to merit a hearing. So I don't think we're that different here. But again, Dr. Rozell's report is not necessarily a magic ticket to a hearing. If it was, then we'd simply hold the hearing every 180 days or as frequently as the movement wanted to ask for a hearing. In summary, I'll summarize. If there's no other questions, the record demonstrates that the district court was well within its discretion in finding that Mr. McLaren failed to plead sufficient particularized facts to merit a hearing under the statute. If there's no further questions. Thank you, Mr. Lockridge. Thank you. Mr. Brignac, you have a few minutes. Three minutes. Thank you, Your Honor. I wanted Judge Gregory just to respond. The government, there is no on-point published case about 47H. The government talks about Comstock. Comstock, putting the burden on the defendant or on the respondent, that was dicta, and that was simply describing the statutory scheme. Mr. Brignac, I'm sorry. Would you be comfortable with the standard, though, that's articulated, the standard the district court used that Mr. Lockridge just articulated? No. State with particularity or change of circumstances. That would be sufficient for Mr. McLaren. That would not be sufficient, I think, for the due process clause because I believe under FUSA v. Louisiana, we don't even have to show that much because if the state wants to keep you locked up because you're dangerous, it is not too much of a burden on the state. It is way too much of a burden on you to say the state has to periodically continue to demonstrate your dangerousness. That's not me. That's Justice White writing in the FUSA case. I do want to say that in Comstock, it was dicta, and it was citing 4248E. They talk about the Taylor case that relied on Anderson, another unpublished case, which is actually unclear as to whether it was under 4247H or 4246E. If you kind of look at it, the court talks about both, and it's not clear. Taylor also cites Evanoff, an Eighth Circuit case. That was an initial commitment. That was not a challenge hearing. It was much like in Comstock, just describing, and they also cited a sealed defendant case that was under E. I mean, the question of what's needed under 4247H, and I think you sort of touched on that, Judge Gregory. They don't have a case, and I don't have a case, and believe me, I've looked. It's not out there. And Judge Duncan, you'd also asked about the CTP program. The Antone case from this court, 742F3-151, this court described the CTP program for Mr. Antone as sort of no choice at all. He was pending commitment, so there was some sense if he didn't want to make admissions. But in our own district court, the Mato case, M-A-H-T-O, that case was a Native American who did not want to participate in CTP because it felt it was not compatible with his status as a Native American in his beliefs, and the district court there actually said he was released, and it said that it was, quote, understandable he did not participate in CTP. And these are district courts who are more on the ground and more familiar. So I just want to reiterate the point I think we made strongly in our brief, which is the CTP program. It's not a principle factor. It's not in the statute, and it's certainly a factor the court can consider, but it cannot and should not be a requirement. But you don't mind them considering it. Oh, of course. You just don't think there should be any adverse. Right. Or may I answer? Yes. Thank you. Your Honor, it is a fact that can and almost certainly would be discussed and possibly even be central to the hearing. If I were the government attorney, the first question I think I would ask him on cross, why weren't you in the program? Of course it's something the court can consider. We were not given that opportunity. Therefore, we ask the court to vacate the judgment of the district court and give us a hearing. Thank you so much. We'll come down to Greek Council and proceed to our final case.
judges: Roger L. Gregory, Allyson K. Duncan, Albert Diaz